UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>　　　　　Defendant. | Civil Action No. (BAH) 14-1024<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Judicial Watch, Inc., brings suit against the defendant, the United States Department of Justice ("DOJ"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that the defendant violated the requirements of FOIA when it responded to the plaintiff's FOIA request. Specifically, the plaintiff challenges the defendant's invocation of FOIA Exemptions 5, 6, and 7 to withhold time records for a DOJ attorney. Now pending before the Court are the parties' cross motions for summary judgment. For the reasons stated below, the defendant's motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied.

**I.　　BACKGROUND**

The defendant is actively investigating whether Internal Revenue Service ("IRS") employees engaged in potential criminal misconduct in connection with the IRS's handling of various organizations' applications for tax-exempt status. *See* Decl. of Nelson D. Hermilla ("Hermilla Decl.") at ¶ 3, ECF No. 10-1. Attorneys from the DOJ's Civil Rights Division and the Public Integrity Section of the Criminal Division are conducting the investigation, with assistance from the Federal Bureau of Investigation and the Department of Treasury Inspector

General for Tax Administration.  *Id.*  In response to Congressional inquiries, the defendant has revealed that Barbara Bosserman, a career senior legal counsel for the Civil Rights Division, is one of the attorneys involved in conducting the investigation.[1]  *Id.* ¶ 4.

The plaintiff submitted a FOIA request to the defendant, seeking "[a]ll Justice Department records from the Interactive Case Management System detailing the number of hours DOJ Attorney Barbara Bosserman expended on the investigation of the Internal Revenue Service targeting of conservative organizations seeking tax-exempt status in the 2010 and 2012 election cycles."  Compl. ¶ 5, ECF No. 1.  After failing to respond to the plaintiff's request, or advise the plaintiff of its ability to appeal such a non-response, the plaintiff initiated the instant suit.  *See id.* ¶¶ 7–9.

After the plaintiff filed suit, the defendant initiated a search for documents responsive to the plaintiff's FOIA request.  In order to comply with the FOIA request, the defendant queried the Interactive Case Management ("ICM") system for the time records of Ms. Bosserman.  Hermilla Decl. ¶ 10.  The ICM system "tracks the case-related activities" for the defendant's legal staff.  *Id.* ¶ 8.  The systems "is a tool for senior management to oversee the work of the Division and to report matter and case data at all levels of the Department to provide for accountability and analyze the Division's performance."  *Id.*  The ICM "capture[s] and report[s] to Division managers, the level of effort that attorneys and professionals dedicate to investigations and case-related tasks."  *Id.*  The ICM system records "the dates of activity, the

---

[1] The parties dispute Ms. Bosserman's role in the investigation, with the plaintiff describing Ms. Bosserman as leading the investigation, *see* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. & Supp. Cross Mot. Summ. J. ("Pl.'s Mem.") at 2, ECF No. 13, while the defendant notes only that Ms. Bosserman was "one of several Justice Department attorneys involved in the investigation," *see* Def.'s Reply Supp. Mot. Summ. J. & Mem. Opp. Pl.'s Cross. Mot. Summ. J. at 2, ECF No. 15.

type of work, the hours expended, a description of the activity, the case name, and the Department of Justice File number." *Id.* ¶ 9.

With respect to Ms. Bosserman, the ICM maintained records detailing "the specific dates [Ms. Bosserman] worked, the number of hours she worked on the investigation on a given date, and the type of activity she performed." *Id.* ¶ 10. In addition, certain entries contained "notes" describing the tasks performed by Ms. Bosserman, including "notes about locations visited, persons consulted, staff briefings, and other case developments." *Id.* ¶ 10. After identifying this information, and in response to the plaintiff's FOIA request, the defendant informed the plaintiff that it possessed documents responsive to its FOIA request but that the documents were exempt from disclosure under FOIA exemptions 6 and 7(C). *Id.* ¶ 7. Now pending before the Court are the parties' cross motions for summary judgment.

## II.     LEGAL STANDARD

Congress enacted the FOIA as a means "to 'open agency action to the light of public scrutiny.'" *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Disclosure is the "'basic policy'" of the Act. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice (CREW)*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). At the same time, the statute represents a "balance [of] the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotation marks and citations omitted). Reflecting that balance, the FOIA contains nine exemptions set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed." *Milner*

*v. U.S. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotations and citations omitted) (citing *FBI v. Abramson*, 456 U.S. 615, 630 (1982)); *see CREW*, 746 F.3d at 1088; *Pub. Citizen, Inc. v. Ofc. of Mgmt. and Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010).  "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).

The agency invoking an exemption to the FOIA "bears the burden of showing that a claimed exemption applies." *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014); *see also CREW*, 746 F.3d at 1088; *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008); *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).  In order to carry this burden, an agency must submit sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld, to enable the court to fulfill its duty of ruling on the applicability of the exemption, and to enable the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court. *See DeBrew v. Atwood*, No. 12-5361, 2015 WL 3949421, at *2 (D.C. Cir. June 30, 2015); *see also CREW*, 746 F.3d at 1088 ("The agency may carry that burden by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)); *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document,

4

without actually disclosing information that deserves protection . . . [which] serves the purpose of providing the requestor with a realistic opportunity to challenge the agency's decision.").

The FOIA provides federal courts with the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Moreover, a district court has an "affirmative duty" to consider whether the agency has produced all segregable, non-exempt information. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue *sua sponte*" (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007))); *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733-735 (D.C. Cir. 2008) ("'[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.'" (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007))); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

Summary judgment is appropriate when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56. "In FOIA cases, '[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, at 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006) and *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013)

(quoting *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011));

*Larson,* 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).

**III.  DISCUSSION**

The defendant initially sought to justify withholding responsive documents from the plaintiff under FOIA Exemptions 6 and 7.  Now, at summary judgment, the defendant also invokes FOIA Exemption 5 in support of its withholding of records.  Hermilla Decl. ¶ 7. Specifically, the defendant invokes both the attorney work product doctrine and the deliberative process privilege, which are covered by Exemption 5.[2]  *See* Def.'s Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s Mem.") at 4–9, ECF No. 10.  Since the Court finds that the time records contain protected attorney work product and that disclosure under FOIA is not required under Exemption 5, the Court does not address the defendant's alternative justifications for withholding.

Under Exemption 5, agencies are not required to disclose in response to a FOIA request "matters that are . . . inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  The D.C. Circuit has explained that "Exemption 5 encompasses the privileges that the Government could assert in civil litigation against a private litigant, such as the attorney-client privilege, the attorney work product privilege, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014).  Two conditions must be met for a record to qualify for this exemption and be withheld: "its source must be a Government agency, and it must fall within the

---

[2] Although unaddressed by the parties, case law supports a claim that, in certain circumstances, time records may be protected by the attorney-client privilege. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999); *Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999); *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 130 (9th Cir. 1992).

ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath Water*, 532 U.S. at 8; *see also Nat'l Inst. of Military Justice v. Dep't of Defense*, 512 F.3d 677, 680, 680 n. 4 (D.C. Cir. 2008) (noting records withheld under Exemption 5 must be inter- or intra-agency records "'unavailable by law' under one of the established civil discovery privileges."). The parties do not dispute that Ms. Bosserman's time records comprise agency documents. Instead, the parties dispute whether the records "fall within the ambit of a privilege against discovery," in this case, the attorney-work product privilege. *Klamath Water*, 532 U.S. at 8.

"The work product doctrine is 'an intensely practical one, grounded in the realities of litigation in our adversary system.'" *Fed. Trade. Comm'n v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 150 (D.C. Cir. 2015) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). In applying the work product doctrine, the D.C. Circuit has instructed that it "should be interpreted broadly and held largely inviolate." *Judicial Watch v. U.S. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005). A broad interpretation of the work product doctrine is consistent with the policy underpinnings articulated by the Supreme Court in the seminal case of *Hickman v. Taylor*, which discussed the importance of permitting "a lawyer [to] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." 329 U.S. 495, 510 (1947).

The starting place for evaluating the scope of the attorney work product doctrine is Federal Rule of Civil Procedure 26(b)(3), which protects "ordinarily," those "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." FED. R. CIV. P. 26(b)(3)(A). The attorney work product doctrine "'does not distinguish between factual and deliberative material'" but extends protection against

7

disclosure to both types of material. *Judicial Watch,* 432 F.3d at 371 (quoting *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987)). Both are protected because, in the context of work product, an attorney's discussion of factual matters may reveal his or her tactical or strategic thoughts. *See Boehringer*, 778 F.3d at 151 ("'At some point . . . a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case.'" (quoting *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997)); *Mervin v. Fed. Trade Comm'n,* 591 F.2d 821, 826 (D.C. Cir. 1978) (noting that "even the factual material segregated from attorney work-product is likely to reveal some of the attorney's tactical and strategic thoughts").

Although both fact and opinion work product are protected as privileged, Rule 26 affords differing levels of protection. In the civil discovery context, the protection afforded to "fact" work product is qualified and may be overcome when the requesting party shows that the material sought is relevant and that "it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED.R.CIV.P. 26(b)(3)(A)(i-ii). "Opinion" work product is given more absolute protection. FED.R.CIV.P. 26(b)(3)(B) ("If the court orders discovery of those materials [for which a party has a substantial need], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). The procedural distinction made between fact and opinion work product in civil discovery is "irrelevant" in the FOIA context, however. As the Supreme Court explained, "[i]t makes little difference whether a privilege is absolute or qualified in determining how it translates into a discrete category of documents that Congress intended to exempt from disclosure under Exemption 5. Whether its immunity from discovery is absolute or qualified, a

protected document cannot be said to be subject to 'routine' disclosure." *Grolier, Inc.*, 462 U.S. at 27. Thus, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). As a result, in the FOIA context, "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch,*, 432 F.3d at 371 ("[W]e hold that, because the emails at issue in this case are attorney work product, the entire contents of these documents— *i.e.*, facts, law, opinions, and analysis—are exempt from disclosure under FOIA.").

Despite its seeming breadth, particularly as applied under Exemption 5, the work product doctrine contains important limits. As a threshold matter, "not all work undertaken by lawyers finds protection in the work-product privilege." *In re Sealed Case*, 146 F.3d 881, 887 (D.C. Cir. 1998). Indeed, not "all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases." *Hickman*, 329 U.S. at 511. Rather, courts have "uniformly . . . held [the work product doctrine] to be limited to documents prepared in contemplation of litigation." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). Thus, "the [work product] privilege has no applicability to documents prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes.'" *In re Sealed Case*, 146 F.3d at 887 (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1515 (D.C. Cir. 1993)). When assessing whether a document is prepared "in anticipation of litigation," courts in this Circuit employ "a 'because of' test, inquiring 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Boehringer*, 778 F.3d at 149 (quoting *United States v. Deloitte LLP*, 610

9

F.3d 129, 137 (D.C. Cir. 2010)); *see also In re Sealed Case*, 146 F.3d at 884 ("The 'testing question' for the work-product privilege . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" (quoting *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 586 n. 42 (D.C. Cir. 1987))). "Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available." *Boehringer*, 778 F.3d at 149.

In the present case, the plaintiff argues that the requested time records are not protected work product because the defendant has not met its burden to show that the time records were prepared in anticipation of litigation.[3] *See* Pl.'s Mem at 5. Rather, according to the plaintiff, the defendant has only introduced evidence showing that the records were "created to assist senior management in 'track[ing] case-related activities of the Division's legal staff[,]' 'oversee[ing] the work of the Division[,]' and 'report[ing] case data at all levels of the Department to provide for accountability and analyze the Division's performance.'" *Id.* (quoting Hermilla Decl.) (alterations in original). As a result, according to the plaintiff, the records were created not in anticipation of litigation but in the regular course of DOJ's business operations. The plaintiff's argument is not without intuitive appeal. Although uncited by the plaintiff, some district courts from other Circuits have evinced support for the plaintiff's view that attorney time records are created in the regular course of business and do not constitute protected attorney work product. *See, e.g.*, *Leach v. Quality Health Servs.*, 162 F.R.D. 499, 502 (E.D. Pa. 1995) (concluding without substantive analysis that it is "unlikely that the billing records would be protected by the

---

[3] Although the DOJ's investigation into various IRS employees has yet to proceed to litigation, an investigation may suffice for purposes of the requirement that the legal work be done in anticipation of litigation, as the plaintiff recognizes. *See* Pl.'s Reply Supp. Mot. Summ. J. at 2, ECF No. 16 ("Plaintiff does not argue that records created during an investigation are never protected by the attorney work product doctrine.").

attorney work product doctrine . . . [because] [b]illing records are commonly created in the regular course of business, which removes them from [the attorney work product] doctrine's coverage."); S*tonehenge/Fasa-Texas, JDC, L.P. v. Miller*, No. 94-CV-0912, 1998 WL 826880, at *2 (N.D. Tex. Nov. 23, 1998) (concluding without substantive analysis that attorney "invoices [are not] protected from discovery by the work product doctrine because . . . . [t]he invoices themselves are merely a byproduct of the fact of the representation.").

Nonetheless, the clear weight of authority—including prior decisions by judges on this Court—holds that attorney time records while not *per se* protected by the work product privilege, may nonetheless contain protected work product. *See Washington Bancorporation v. Said*, No. 88-3111, 1989 WL 946533, at *4-5 (D.D.C. May 10, 1989); *Indian Law Res. Ctr. v. Dep't of Interior*, 477 F. Supp. 144, 148 (D.D.C. 1979); *Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001) (Facciola, M.J.). Where time records are not only created by legal personnel but also reference the subject of legal research, persons contacted and interviewed by the attorney, or other issues bearing on the mental impressions of the attorneys, those portions of the time records are protected work product. *See Washington Bancorporation*, 1989 WL 946533, at *4-5 (finding attorney time records to be protected work product where they contained "itemization of persons contacted, research conducted, and amounts of attorney time spent on identified issues"); *Indian Law Res. Ctr.*, 477 F. Supp. at 148 (finding attorney time records to be protected work product where they contained "detailed itemization of persons contacted and locations visited on particular days, research memoranda prepared on specific topics, and precise amounts of attorney time spent on identified issues, frequently relates to matters of past, present or potential future litigation."); *Cottier v. City of Martin*, No. 02-5021, 2007 WL 4568989, at *2 (D.S.D. Dec. 19, 2007) ("Attorney billing records are protected by the attorney-client privilege and the work

product doctrine insofar as they reveal the nature of the services provided."); *Cardenas v. Prudential Ins. Co. of Am.*, No. 99-1422, 2003 WL 21302957, at *3 (D. Minn. May 16, 2003) (finding work product privilege applied to attorney time records containing "narrative descriptions of conversations between clients and attorneys, the subjects of legal research or internal legal memoranda, and activities undertaken on the client's behalf"); *see also Freebird, Inc. v. Cimarex Energy Co.*, 264 P.3d 500, 507 (Kan. 2011) ("[T]he work-product doctrine . . . does not offer a per se exemption for attorney billing statements. Certainly, if the billing statement narrative reflected litigation strategy or specified the nature of the services provided, such as research to a particular area of law, it may be privileged."); *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 870 N.E.2d 1105, 1114 (Mass. 2007) ("[D]etails in [attorney] billing statements may reveal . . . the attorney's mental impressions or legal theories, that is, his work product, which is protected and generally not open to discovery."); *Hewes v. Langston*, 853 So.2d 1237, 1249 (Miss. 2003) ("We conclude that the [attorney] billing statements and Day Timer entries are the type of detailed statements that are protected by the work product doctrine, and the trial court erred in ordering them produced.").

Indeed, the potential for attorney time statements to contain work product is so well-established that at least one district court expressly contemplates the need to redact work product from attorney time records submitted in support of attorneys' fees petitions. *See* Local Civil Rule 54.3(d) (N.D. Ill.) (permitting time records to "be redacted to prevent disclosure of material protected by the . . . work product doctrine" when submitting motions for fees); *see also Kurgan v. Chiro One Wellness Centers LLC*, No. 10-1899, 2014 WL 1778571, at *2 (N.D. Ill. May 2, 2014) (analyzing whether attorney's time records submitted in support of fee petition contained attorney work product).

In the present case, the defendant's time records contain "Ms. Bosserman's accounts of the tasks as she performed them, including notes about locations visited, persons consulted, staff briefings, and other case developments." Hermilla Decl. ¶ 10. This material was prepared in contemplation of an ongoing criminal investigation and provided to supervisors to assist them in overseeing the investigation and potential prosecution of certain IRS employees. Hermilla Decl. ¶ 8. As a result, according to the defendant, the time records provide "a roadmap of [the DOJ's] investigative plans" and their disclosure would "prematurely reveal the scope and focus of the investigation." Def.'s Mem. at 8–10. Thus, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *In re Sealed Case*, 146 F.3d at 884.[4]

Consistent with the great weight of authority at both the federal and state level, the portions of Ms. Bosserman's time records detailing the locations visited, persons contacted, staff briefings, and other case developments are protected from disclosure as attorney work product. *See Long v. U.S. Dep't of Justice*, 703 F. Supp. 2d 84, 101 (N.D.N.Y. 2010) (denying FOIA request for attorney time records where agency "declarations sufficiently explain why attorney time records constitute privileged information within the meaning of Exemption 5"), *vacated in part on other grounds on reconsideration*, 778 F. Supp. 2d 222 (N.D.N.Y. 2011). Since the descriptions contained in the time records are "fully protected as work product[,] . . . segregability is not required." *Judicial Watch*, 432 F.3d at 371; *Tax Analysts*, 117 F.3d at 620. Accordingly, the defendant need not produce the requested time records even though the plaintiff seeks only the number of hours worked by Ms. Bosserman and not information relating to the

---

[4] Based on the defendant's detailed declarations, *see* Hermilla Decl., the Court is satisfied that Ms. Bosserman's time records contain protected attorney work product and that *in camera* review of the requested records is unnecessary.

13

activities performed. *See* Pl.'s Mem. at 7, 9 n.2, 10 (noting that DOJ could redact portions of time records documenting activities performed as non-responsive to FOIA request).

## IV.    CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is granted and the plaintiff's cross motion for summary judgment is denied.  An appropriate Order accompanies this Memorandum Opinion.

Date: July 31, 2015

_____
BERYL A. HOWELL
United States District Judge